FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA 99MAR -5 PH 1: 50
SOUTHERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

WILLIAM SMITH,               )
                             )
        Plaintiff,           )
                             )
vs.                          )       CV 98-BU-0104-S
                             )
AMS GROUP, INC.,             )       ENTERED
                             )
        Defendant.           )       MAR 0 5 1999

## Findings of Fact & Conclusions of Law

This cause came on to be heard on a non-jury trial held at 10:00 a.m. on Monday, March 1, 1999, in Courtroom 5B of the Hugo L. Black United States Courthouse. At trial, the plaintiff, William Smith ("Smith"), claims that the defendant, AMS Group, Inc. ("AMS"), is liable for compensatory damages in the amount of $20,050.96 in overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, particularly, § 207(a) and liquidated damages for the same amount under 29 U.S.C. § 260. If successful, the plaintiff also seeks attorneys' fees under 29 U.S.C. § .

### FACTS

At trial, the plaintiff testified that he was hired by AMS on March 12, 1997 and worked through December of that year. According to him, he was told in an interview with Jeffery Wayne Hammontree, prior to his employment, that he would be compensated at a salary of $700.00 per work week, which he believed consisted of forty to forty-five hours per week, inclusive of travel time, and that he would receive overtime pay for any time that he spent working over forty-five hours per

week.[1] Hammontree, the plaintiff's supervisor for some amount of plaintiff's time at AMS, disputed this. The plaintiff then presented evidence of his pay sheets for that period, absent, apparently pay sheets for the weeks ending on May 26, 1997, June 2, 1997, and December 13, 1997. These pay sheets filled out by the plaintiff, inclusive of travel time, form the basis of the plaintiff's assertion that he worked several hours of overtime each recorded week. The plaintiff does not seek overtime pay for those weeks for which he has no records. The defendants did not provide serious contest to the veracity of these worksheets as demonstrating that the plaintiff worked the overtime hours alleged.[2]

The plaintiff described his duties at AMS as being preparation work for the installation of hospital equipment by General Electric. Apparently, upon the purchase of a piece of equipment by a hospital, AMS would be contacted to prepare the hospital for that equipment's installation. Depending upon the job upon which AMS was called to work, prior to General Electric coming to a hospital and installing a piece of medical equipment, AMS would be called upon to properly wire and plumb the area in which that equipment was to be installed; they might be required to remove earlier placed equipment from the room, to pull wires from the walls; and , if the dimensions of the room might need to be changed, they might need to the break down walls, floors, and ceilings, and to reconstruct such. No dispute arose as to the general nature of the defendant's work.

Usually, the construction work was to be done in such a way that outside help would be more cost-effective; AMS would therefore contact subcontractors to handle the work, and the plaintiff would supervise and organize the timing of the work of these subcontractors. The plaintiff contended that he was not given the authority to hire or fire any subcontractors. No testimony was made as to the helpers. Hammontree, upon questioning by this court, stated otherwise.[3] In his

---

[1] The plaintiff stated that he often requested his overtime while he worked for AMS. The defendant's witnesses all testified that they never received such a request from the plaintiff. The plaintiff also testified that he had made a written request for overtime pay, but the defendant disputes this, stating that they never received such an agreement and making much of the plaintiff's inability to produce such a document at trial. However, the court notes, pay sheets of the plaintiff included a place on which he was to record his overtime.

[2] Only two real arguments on this point were presented. The first, that because the time sheets for three weeks are missing, the whole set of time sheets are useless for calculation of overtime pay, is unpersuasive because the plaintiff is not seeking pay for those periods; rather, he seeks overtime pay for those specific periods on which he has records. Second, the defendant calls the calculation of overtime pay incorrect because the plaintiff recorded himself as working eight hours on two holidays; however, the plaintiff has disavowed any compensation based upon addition of those holiday hours into his weekly hours worked. Therefore, the defendant's argument on this point fails.

[3] Jesse Stewart, another witness for the defendant, also stated otherwise.

testimony, he indicated that the plaintiff had the authority to hire or fire subcontractors. At the same time, however, Hammontree could not think of an instance in which the plaintiff hired or fired a subcontractor without either direction from AMS[4] or contacting Hammontree in his role as supervisor of the plaintiff.

Work not performed by subcontractors was, asserted the plaintiff, to be done in-house by himself and a helper, if such a helper was assigned to him. The amount of such work is of some significance in the instant case. The plaintiff stated that while he was employed at AMS, at least ninety percent of his employment duties involved manual labor. The plaintiff then recited a number of jobs on which he was required to perform manual labor. At these jobs, he was required to assist a master electrician in laying wire, to secure the placement of ducts, to tear out walls, to paint walls, hang wallpaper, and to lay tile on the floors, among other acts.[5]

According to Jesse Stewart ("Stewart"), a vice-president and one-third owner of AMS, when he operated as a construction superintendent, he spent no more than ten percent f his time performing manual labor, and then on small jobs it would not be cost effective to subcontract out. He also stated that if Smith was performing his job as he should have been, Smith should only have spent fifteen percent of his time on manual labor. Stewart also indicated his doubts that the plaintiff did the work to which he testified at trial, particularly the duct work, but Stewart was not present to have empirical knowledge of this. However, Stewart conceded that he never had any difficulties with the plaintiff's work. Hammontree testified that the plaintiff's position would require about twenty percent manual labor. When pressed on this point, Hammontree conceded that the position might have required much more or much less manual labor and that he never observed the plaintiff at work.

---

[4] Testimony indicated that it was often the case that AMS selected or pre-screened potential subcontractors to be hired for a job.

[5] The plaintiff claimed that he noted travel time from the time that he left home until he arrived at AMS's warehouse to procure tools and plans for the construction job from AMS's warehouse and from his time leaving AMS until he arrived at the job site. He only went directly to a job site from home on one occasion. The defendant contends that all of plaintiff's travel time should be ignored because the plaintiff included driving to work from his hotels and home.

Conclusions of Law

Section 207(a)(1) of Title 29 states:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified t a rate not less than one and one-half times the regular rate at which he is employed.

*See also Davis v. City of Hollywood,* 120 F.3d 1178, 1179 (11ᵗʰ Cir. 1997). The court finds that the plaintiff has proven, to a preponderance of the evidence, (1) that FLSA applied, (2) that the plaintiff did work the amount of overtime that he alleges, inclusive of travel time, (3) that the defendant knew of such work; and (4) his rate of pay while employed by AMS. *See Reich v. Department of Conservation and Natural Resources, State of Alabama,* 28 F.3d 1076, 1082 (11ᵗʰ Cir. 1994). Therefore, it was incumbent upon the defendant to demonstrate either that the plaintiff falls within an exemption to § 207(a)(1) or that he is not entitled to all of the overtime that he claims.

Section 213(a)(1) of this title exempts from coverage "any employee employed in a bona fide executive, administrative, or professional capacity." In *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 965 (11ᵗʰ Cir. 1997), the Eleventh Circuit Court of Appeals stated:

> The FLSA exempts from its overtime pay requirements "any employee employed in a bona fide executive, administrative, or professional capacity" who receives payment on a salary basis. §29 U.S.C. 213(a)(1)(1994); *see also Avery v. City of Talladega*, 24 F.3d 1337, 1340 (11ᵗʰ Cir. 1994). Exemptions under the FLSA, however, are to be construed narrowly. *Nicholson v. World Business Network, Inc.*, 105 F.3d 1361, 1364 (11ᵗʰ Cir.), *cert. denied,* — U.S. — , 118 S.Ct. 368 [] (1997). Indeed, the employer has the burden of showing that it is entitled to the exemption. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11ᵗʰ Cir. 1995).

"[T]o claim exemption from the FLSA's overtime pay requirements pursuant to section 213(a)(1), an employer must prove that the relevant employees meet two tests: the job duties test and the salary basis test." *Davis v. City of Hollywood,* 120 F.3d at 1179. While the parties apparently agree that the plaintiff meets the salary test, they dispute whether Smith satisfies the job duties test. The regulations promulgated pursuant to the FLSA define executive capacity:

> The term "employee employed in a bona fide executive * * * capacity" in section 13(a)(1) of the act shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which  he is
employed or of a customarily recognized department of subdivision thereof;  and
(b) Who customarily and regularly directs the work of two or more other employees
therein;  and
(c) Who has the authority to hire or fire other employees or whose suggestions and
recommendations as to the hiring or firing and as to the advancement and
promotion or any other change of status of other employees will be given particular
weight;  and
(d) Who customarily and regularly exercises discretionary powers;  and
(e) Who does not devote more than 20 percent, or, in the case of an employee of a
retail or service establishment who does not devote as much as 40 percent, of his
hours of work in the workweek to activities which are not directly and closely related
to the performance of the work described in paragraphs (a) through (d) of this
section:  Provided, That this paragraph shall not apply in the case of an employee
who is in sole charge of an independent establishment or a physically separated
branch establishment, or who owns at least a 20- percent interest in the enterprise in
which he is employed;  and
(f) Who is compensated for his services on a salary basis at a rate of not less than
$155 per week (or $130 per week, if employed by other than the Federal
Government in Puerto Rico, the Virgin Islands, or American Samoa),  exclusive of
board, lodging, or other facilities:  Provided, That an employee who is compensated
on a salary basis at a rate of not less than $250 per week (or $200 per week, if
employed by other than the Federal Government in Puerto Rico, the Virgin Islands
or American Samoa), exclusive of board, lodging, or other facilities, and whose
primary duty consists of the management of the enterprise in which the employee is
employed or of a customarily recognized department or subdivision thereof, and
includes the customary and regular direction of the work of two or more other
employees therein, shall be deemed to meet all the requirements of this section.

29 C.F.R. § 541.1. Given that the plaintiff made in excess of $250.00 per week, the plaintiff is deemed

to have satisfied all of the requirements of § 541.1 so long as his primary duty consists of "the

management of an enterprise in which employed or of a customarily recognized department or

subdivision thereof and includes the customary and regular direction of the work of two or more

other employees therein." § 541.119.  The defendant failed to demonstrate this.  The phrase "two or

more other employees *therein*" is instructive.  It does not refer to control over subcontractors or those

who are not employees of the company itself, but employees of the business.  At best, the plaintiff had

control over one helper at any given time.  Even if the subcontractors do constitute "employees," he

did not direct their work.  The subcontractors, once given the plans, directed their own work, the

plaintiff did little more than coordinate their departure and arrival, when he himself was not

engaging in labor.  Further, his supervisory abilities were circumscribed, as the defendant did not

adequately demonstrate that the plaintiff had authority to hire or fire employees of AMS or

subcontractors. As the defendant has failed to demonstrate that the plaintiff is exempt, the defendant's contention that the plaintiff is exempt from the overtime provisions in § 207(a)(1) fail.

The defendant also argues that under the Portal-to-Portal Act, , contained at 29 U.S.C. § 251, *et seq.*, the travel hours of the plaintiff are exempt from coverage under § 207(a)(1). Section § 254(a)(1) states that "no employer shall be subject to any liability or punishment under the [FLSA] . . . to pay overtime compensation, for or on account of . . . walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." "On the whole it is clear . . . that while Congress intended to outlaw claims prior to 1947 for wages based on all employee activities unless provided for by contract or custom of the industry, including, of course, activities performed before or after regular hours of work, it did not intend to deprive employees of the benefits of the Fair Labor Standards Act where they are an *integral part of and indispensable to their principal Activities.*" *Steiner v. Mitchell*, 350 U.S. 247, 255 (1956) (emphasis added). The issue here is how much of the time spent by the plaintiff was an integral part of and indispensable to the principal requirements of the plaintiff's work, and how much was simply preliminary or postliminary activity that is non-compensable.

"Whether an activity is preliminary or postliminary to principal activities for purposes of § 254(a)(2) of the Portal-to-Portal Act is a mixed question of law and fact because the precise nature of the employee's duties is a question of fact, while application of the FLSA to those duties is a question of law." *Baker v. Barnard Const. Co., Inc.*, 146 F.3d 1214, (10th Cir. 1998). Obtaining plans for the construction job was clearly essential to determining where General Electric would eventually place the equipment, where wiring, duct work, &c., would need to go. The plaintiff's arrival at the warehouse and transport of those documents, along with tools necessary for the completion of the job to the site where the work was actually to take place, were not preliminary or postliminary to such work and the exclusion in the Portal-to-Portal Act does not apply. Counting of the travel time to and from a hotel to the work site and from home to the office is, however, excluded from the calculation of overtime.

The plaintiff asserts that he is entitled to $7.77 per hour for those hours (170, in total) between forty and forty-five for which he was compensated by salary to which he is entitled under FLSA. Under FLSA, on this time, the plaintiff is entitled to recover $1,320.90. The plaintiff also asserts that it is entitled to 858.45 hours of overtime payment at $23.33. Having examined the

subcontractors.  As the defendant has failed to demonstrate that the plaintiff is exempt, the defendant's contention that the plaintiff is exempt from the overtime provisions in § 207(a)(1) fails.

The defendant also argues that under the Portal-to-Portal Act, , contained at 29 U.S.C. § 251, *et seq.*, the travel hours of the plaintiff are exempt from coverage under § 207(a)(1).  Section § 254(a)(1) states that "no employer shall be subject to any liability or punishment under the [FLSA] . . . to pay overtime compensation, for or on account of . . . walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform."  "On the whole it is clear . . . that while Congress intended to outlaw claims prior to 1947 for wages based on all employee activities unless provided for by contract or custom of the industry, including, of course, activities performed before or after regular hours of work, it did not intend to deprive employees of the benefits of the Fair Labor Standards Act where they are an *integral part of and indispensable to their principal Activities." Steiner v. Mitchell*, 350 U.S. 247, 255 (1956) (emphasis added).  The issue here is how much of the time spent by the plaintiff was an integral part of and indispensable to the principal requirements of the plaintiff's work, and how much was simply preliminary or postliminary activity that is non-compensable.

"Whether an activity is preliminary or postliminary to principal activities for purposes of § 254(a)(2) of the Portal-to-Portal Act is a mixed question of law and fact because the precise nature of the employee's duties is a question of fact, while application of the FLSA to those duties is a question of law." *Baker v. Barnard Const. Co., Inc.*, 146 F.3d 1214, (10th Cir. 1998).  Obtaining plans for the construction job was clearly essential to determining where General Electric would eventually place the equipment, where wiring, duct work, &c., would need to go.  The plaintiff's arrival at the warehouse and transport of those documents, along with tools necessary for the completion of the job to the site where the work was actually to take place, were not preliminary or postliminary to such work and the exclusion in the Portal-to-Portal Act does not apply.  Counting of the travel time to and from a hotel to the work site and from home to the office is, however, excluded from the calculation of overtime.

The plaintiff asserts that he is entitled to $7.77 per hour for those hours (170, in total) between forty and forty-five for which he was compensated by salary to which he is entitled under FLSA.  Under FLSA, on this time, the plaintiff is entitled to recover $1,320.90.  The plaintiff also asserts that it is entitled to 858.45 hours of overtime payment at $23.33.  Having examined the

plaintiff's time sheets for indications of travel not covered by the Portal-to-Portal Act, the court finds that ninety-three hours of the recorded travel time is non-compensable. Therefore, rather than the 858.45 hours of overtime suggested by the plaintiff, the plaintiff is entitled to only 765.45 hours of overtime pay. At a rate of $23.33 dollars per hour (the agreed upon hourly wage of the plaintiff times 1.5), the plaintiff is therefore entitled to compensatory damages in the sum of $17,857.95.

The plaintiff also seeks liquidated damages under 29 U.S.C. § 216(b). However, § 260 of Title 29 provides that "[]f the employer shows to the satisfaction of the Court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of [FLSA], the court may, in its discretion, award no liquidated damages. . . ." The defendant's basis, from the facts shown at trial, for limiting the court's award to compensatory damages is that the defendant acted in good faith because it followed industry practice in not providing overtime pay.

> An employer who seeks to avoid liquidated damages bears the burden of proving that its violation was "both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." An employer who knew or had reason to know that the FLSA applied, could not establish good faith as a defense. Thus, the district court's decision whether to award liquidated damages does not become discretionary until the employer carries its burden of proving good faith. In other words, liquidated damages are *mandatory* absent a showing of good faith.

*United States v. McKennon*, 814 F.2d 1539, 1539 (11th Cir. 1987) (citation omitted). The defendant in this case should have known, and perhaps did know, that, at least with respect to some employees, it was required to pay overtime. The fact that defendant required overtime to be recorded on its time sheets perhaps belies the assertion that it had no such knowledge. The defendant put on no evidence that it attempted to determine the scope of its duties under the act with regard to the plaintiff. Rather, defendant's witness James Stevens testified that he did not pay overtime due to a general practice in the industry. While, perhaps, the fact that the defendant relied upon industry practice in deciding not to pay the plaintiff overtime should be considered by this court in its calculation of liquidated damages, it does not demonstrate good faith sufficient to avoid the imposition of such damages. The court finds an appropriate award of such damages to be $5,000.00.

The attorneys' fees and costs of the prevailing plaintiff are to be paid by the defendant under § 216(b) of Title 29. The parties have stipulated to the plaintiff's total hours invested in the instant action — 82.4 hours of pre-trial work and $910.96 of assorted costs. In addition, the trial lasted 3.5

hours.  The parties, not discussing the issue to any real degree, left the determination of a reasonable hourly fee to the court.  The parties stipulated and court recognizes a reasonable fee of $200.00 per hour.  Therefore, the plaintiff is entitled to 85.9 times $200.00 in attorneys' fees, or $17180.00 and $910.96 in costs, for a total of $18,090.96.

### Conclusion

For the forgoing reasons, the court finds that the plaintiff is entitled to an award of $19,178.85 in compensatory damages, $5,000.00 in liquidated damages and $18,090.96 in attorneys' fees and costs.  Contemporaneously with the filing of this memorandum, the court will enter a judgment in the amount of $42,269.81.

Done this _____ day of March 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE